**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BARBARA KOWAL,

       *Plaintiff*,

   v.

UNITED STATES DEPARTMENT OF
JUSTICE *et al.*,

       *Defendants*.

Civil Action No. 18-2798 (TJK)

<u>**MEMORANDUM OPINION AND ORDER**</u>

    Barbara Kowal, a paralegal at the Federal Defender for the Middle District of Florida,

filed this FOIA suit against the DOJ and three of its components, the ATF, FBI, and DEA.

Kowal requested all records from the ATF and FBI pertaining to Daniel Troya, a capital

defendant represented by the Federal Defender in his post-conviction hearings.  The ATF and

FBI produced documents from their records systems, but withheld some documents in whole or

in part under several FOIA and Privacy Act exemptions.  The FBI also sent a subset of

documents to the DEA for review, which the DEA released in part to Kowal.

    Defendants moved for summary judgment, arguing that the ATF and FBI adequately

searched for records, and that the ATF, FBI, and DEA properly withheld documents under

certain FOIA and Privacy Act exemptions and met their duty to disclose all reasonably

segregable portions of the records.  Kowal then cross-moved for summary judgment, arguing

that the searches were deficient because the ATF and FBI failed to use adequate search terms and

search all relevant records systems, and that the ATF, FBI, and DEA failed to adequately justify

the exemptions at issue, improperly withheld information in the public domain, and failed to

disclose all reasonably segregable information.  For the reasons explained below, the Court will

grant Defendants' motion and deny Kowal's as to her claims against the ATF and the adequacy of the FBI's search, and otherwise deny the motions without prejudice.

## I.      Background

Kowal's office began representing Daniel Troya ("Troya") in his capital post-conviction proceedings in April 2015.  ECF No. 1 ("Compl.") ¶ 8.  Kowal requested all records from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and Federal Bureau of Investigation (FBI) pertaining to Troya under the Freedom of Information Act (FOIA).  *Id.* ¶¶ 13, 18, 19.  Kowal submitted one FOIA request to the ATF and two requests to the FBI.[1]  *Id.* The FBI sent a subset of the documents that it identified in response to Kowal's first request to it to the Drug Enforcement Administration (DEA) and referred Kowal's entire second request to the ATF.  *Id.* ¶¶ 16, 21.  The DEA informed Kowal that it had already processed most of the documents by responding to a previous request she had directed to it, and released the remaining documents to her, in part, through the FBI.  *Id.* ¶ 17; ECF No. 1-5; ECF No. 1-6.  Because the Court has already addressed the DEA's response to Kowal's previous FOIA request, *Kowal v. DOJ*, No. 18-cv-938 (TJK), 2020 WL 2849889 at *1 (D.D.C. June 1, 2020) ("*Kowal I*"), it need not do so again here.

### A.      FBI

In June 2015, Kowal submitted a FOIA request to the FBI seeking documents related to Troya's prosecution.  Compl. ¶ 13.  She requested "all documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of . . . Daniel Troya (a/k/a 'Homer'), DOB: 04/22/1983" and cited his federal criminal charges.  *Id.*; *see* ECF No. 1-1.

---

[1] The first request asked for a copy of the FBI's files, and the second for a copy of the ATF's files.  ECF No. 1-1; ECF No. 1-7.

The FBI identified and reviewed records responsive to Kowal's FOIA request, and from those it released 134 pages in full, withheld 141 pages in their entirety, and sent some of its records to the DEA for further review.  Compl. ¶ 16.[2]  As for the documents it withheld without DEA review, the FBI invoked FOIA Exemptions 6, 7(C), 7(D), 7(E), and Privacy Act Exemption (j)(2).  *Id.*; *see* ECF No. 1-4; ECF No. 19-6 ("Hardy Decl.") ¶ 7 n.3.  Exemption (j)(2) allows heads of agencies to exempt from disclosure any system of records with a principal function of any activity pertaining to criminal law enforcement.  5 U.S.C. § 552a(j)(2).  Exemption 6 protects information in personnel and medical files when disclosure would "constitute a clearly unwarranted invasion of personal privacy."  *Id.* § 552(b)(6).  The remaining exemptions apply to information compiled for law enforcement purposes: Exemption 7(C) protects against unwarranted invasions of personal privacy; Exemption 7(D) protects the identities of confidential sources or information furnished by confidential sources; and Exemption 7(E) protects law enforcement techniques and procedures.  *Id.* §§ 552(b)(7)(C), (b)(7)(D), (b)(7)(E).

Of the 83 pages the FBI sent to the DEA, most had already been processed in connection with the previous FOIA request made by Kowal; the DEA returned the remaining pages to the FBI, which released them in part to Kowal.  Compl. ¶ 17; ECF No. 1-5; ECF No. 1-6.[3]  For these

---

[2] Kowal alleges that the FBI reviewed 416 pages, but she arrives at that number by including both the 83 pages the FBI sent to the DEA as well as the 58 pages the DEA withheld in part. Compl. ¶ 16.  The FBI's response to her FOIA request states that it reviewed 275 pages, of which 134 pages were released and 141 pages withheld.  ECF No. 1-4; *see also* ECF No. 10 ¶ 16; ECF No. 19-6 ("Hardy Decl.") ¶ 7.

[3] In its response to Kowal's FOIA request, the FBI stated that it referred 83 pages to the DEA, but the DEA later clarified in a letter to Kowal that the FBI sent 68 pages as a referral and 15 pages as a consultation.  ECF No. 1-4; ECF No. 1-6.  That explains why the DEA responded directly to Kowal about the 68 pages, but returned the 15 pages to the FBI for release in part to Kowal.  *See* ECF No. 1-5; ECF No. 1-6; *see also* Hardy Decl. ¶ 79 ("With consultations, the FBI asks the other agency how it would like its information in FBI records to be handled [and]

documents, the FBI, based in part on the DEA's recommendations, invoked Privacy Act

Exemption (j)(2) and FOIA Exemptions 3, 6, 7(C), 7(D), 7(E), and 7(F).  ECF No. 1-5.

Exemption 3 spares from disclosure matters that must be withheld under statute, 5 U.S.C.

§ 552(b)(3), and Exemption 7(F) protects against endangering the life or physical safety of any

person, *id.* § 552(b)(7)(F).

In its declaration supporting its motion, the FBI states that it conducted its search for

responsive documents within its Central Records System (CRS), its "extensive system of records

. . . compiled and maintained by the FBI in the course of fulfilling its integrated missions and

functions as a law enforcement, counterterrorism, and intelligence agency" that "spans the entire

FBI organization and encompasses the records of FBI Headquarters . . . FBI Field Offices, and

FBI Legal Attache Offices . . . worldwide."  Hardy Decl. ¶¶ 21, 34.  The CRS uses an index

search methodology that is "reasonably expected to locate responsive material within the vast

CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval to serve its

primary law enforcement and intelligence gathering functions."  *Id.* ¶ 32.  In searching for

records responsive to Kowal's request, the FBI used its Automated Case Support (ACS) and

Universal Index (UNI) to capture data that had been indexed in its older automated systems.  *Id.*

¶¶ 26, 29.  The FBI then conducted an index search in Sentinel, a case management system in

---

responds to the requester about the disposition of the information," and "[w]ith referrals, the FBI
sends the record back to the agency from which it originated, and that agency decides the
disposition of the record and responds directly to the requester.").  Although the FBI's response
said it released all 15 pages, Kowal clarifies that 12 pages were released in part and 3 pages were
withheld in their entirety.  *See* ECF No. 1-5; Compl. ¶ 17.  Then, while preparing its declaration,
the DEA determined that the FBI had transmitted 67 pages for referral and 16 pages for
consultation.  *See* ECF No. 19-5 ("Hertel Decl.") ¶ 8.  It is unclear whether Kowal ever received
or knew about the additional withheld page.  *Id.* ¶ 30.  The referred pages previously processed
by the DEA are part of Kowal's other case before the Court.  *Id.* ¶ 6; ECF No. 1-6; *see also*
Complaint ¶ 12, *Kowal I.*

place since July 2012 in which "all FBI generated records are created electronically in case files," to "ensure it captured all relevant data indexed." *Id.* ¶¶ 27, 29.

In sum, the FBI conducted index searches in the CRS for the terms "Daniel Anthony Troya" and "Homer Troya" (referencing Troya's alias) using the ACS/UNI and Sentinel automated indices, from which it located and processed one main file and one cross-reference record. *Id.* ¶ 33.  The FBI characterizes a main file as a "main index entry . . . created for each individual or non-individual that is the subject or focus of an investigation," and the "main subject(s) are identified in the case title of most documents in a file." *Id.* ¶ 23.  In contrast, a "cross-reference record" is a "reference index entry . . . created for individuals or non-individuals associated with the case [who] are not the main subject(s) or focus of an investigation," and "[r]eference subjects are typically not identified in the case title of a file." *Id.*  Because the CRS is "where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval," the FBI maintains that it adequately searched for records concerning "any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole" of Troya.  *Id.* ¶ 34.

The FBI also provided a *Vaughn* index of the documents it withheld in part or in full based on FOIA and Privacy Act exemptions.  *See* ECF No. 19-7 at 73–85 ("FBI Index").[4]  The index includes entries for the documents sent to the DEA for consultation.  *See id.*, Bates Nos. 31–46; ECF No. 19-5 ("Hertel Decl.") ¶ 10.[5]  It works in tandem with a declaration from the FBI

---

[4] The citations in this Memorandum Opinion and Order adopt the pagination in the ECF-generated headers of the parties' filings.

[5] As mentioned previously, the DEA received 16 pages from the FBI for consultation.  Hertel Decl. ¶ 8.

and, to some extent, a declaration from the DEA, which describe the types of general information withheld under each exemption.  *See* Hardy Decl. ¶¶ 38–78; Hertel Decl. ¶¶ 11–29.[6]  The *Vaughn* index uses a "coded format" – that is, each entry in the index provides the applicable Bates number for the page, a short description where a page has been withheld in full, and a checklist of exemptions claimed for the page that corresponds to coded categories describing the information withheld.  *See* FBI Index.

**B.     ATF**

Kowal submitted two more FOIA requests for the same records in August 2017: one to the FBI requesting the ATF's files; and one to the ATF directly.  Compl. ¶¶ 18–19; ECF No. 1-7; ECF No. 1-8.  The FBI soon informed Kowal that her request was being routed to the ATF for processing.  Compl. ¶ 21; ECF No. 1-10.  The ATF identified and reviewed 467 pages it found responsive to Kowal's FOIA request, and from those pages it released 61 pages in full and 212 pages in part, and withheld 194 pages in their entirety.  Comp. ¶ 25; ECF No. 1-14.  The ATF invoked FOIA Exemptions 6, 7(C), and 7(E) in its decision to withhold documents in whole or in part.  Compl. ¶ 25; *see* ECF No. 1-14.[7]  The ATF later informed Kowal that its response to her FOIA request incorporated the request that the FBI routed to the ATF.  Compl. ¶ 28; ECF No. 1-

---

[6] The DEA represents, and the FBI Index confirms, that although the DEA made recommendations on the consultation pages, the FBI made the final determinations.  *Compare* Hertel Decl. ¶¶ 30–32 (recommending four documents for withholding and seven documents for release in full), *with* FBI Index, Bates Nos. 31–46 (reflecting four documents withheld in full and five documents released in full).

[7] Kowal alleges that the ATF also invoked Exemptions 7(D) and (F), as well as (j)(2), but the record does not support this assertion.  *See* Compl. ¶ 25; ECF No. 1-14; ECF No. 10 ¶ 25.  It also appears that the ATF removed its Exemption 3 designations and then released previously withheld documents to Kowal in its supplemental response.  *See, e.g.*, ECF No. 19-3 at 4 ("Disclosure Decision determined that [this document] should not have been withheld under Exemption 3.  A partially redacted version of the document was later produced to Plaintiff in a supplemental release.").

17.  After Kowal appealed, the ATF released in part one more page to her.  Compl. ¶ 29.  The ATF also located another 13 pages responsive to Kowal's request when it was preparing its declaration; it released them to her in a supplemental response.  ECF No. 19-2 ("Siple Decl.") at 5–6.

In its declaration supporting its motion, the ATF states that it conducted its search for responsive documents in the "two systems of records where ATF records of criminal investigations are housed," "N-Force" and the Treasury Enforcement Communications System (TECS).  Siple Decl. at 2.  The ATF explains that "[n]o other record system used or maintained by ATF is likely to have records of specific criminal investigations undertaken by or involving the ATF."  *Id.*  The ATF searched "Daniel Troya" in both databases and located the criminal investigation at issue in Kowal's FOIA requests.  *Id.* at 4.  The ATF then worked with its Miami Field Division, including "agents knowledgeable of the case," to retrieve the entire case file.  *Id.*

The ATF also provided a *Vaughn* index of the records it withheld, *see* ECF No. 19-3 ("ATF Index"), which works in tandem with the ATF's declaration, *see* Siple Decl. at 6–8.

## II.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56.  Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor."  *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions."  *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008).  It creates a "strong presumption in favor

of disclosure," and "places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). If information is already in the public domain, an agency cannot invoke an otherwise valid exemption to withhold it. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001). When an agency withholds portions of a record, it must still disclose "[a]ny reasonably segregable portion . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

A court reviewing a FOIA action may grant summary judgment based on the agency's declarations "[i]f an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). But the agency may not rely on "conclusory and generalized allegations of exemptions" in its affidavits. *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).

## III.   Analysis

### A.   Adequacy of the Agencies' Searches

Kowal challenges both agencies' searches. Each agency must show that it conducted a search "reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Agencies can satisfy this burden through a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Such affidavits are given "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other

documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted).

A court judges a FOIA search "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search" because "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The agency need not search all its records systems, but it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. An agency that restricts its search to certain records systems must "explain in its affidavit that no other record system was likely to produce responsive documents." *Id.* Agencies need not use every possible search term, *Canning v. U.S. Dep't of State*, 346 F. Supp. 3d 1, 14 (D.D.C. 2018), and "there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request," *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009). "[P]ositive indications of overlooked materials" may suggest that a search was inadequate, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999), but the Court must evaluate the search by whether it was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant," *SafeCard Servs., Inc.*, 926 F.2d at 1201. If the agency meets the standard of reasonableness, "a court need not quibble over every perceived inadequacy in an agency's response." *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009).

Kowal asserts that both the FBI and ATF failed to search databases and files likely to contain responsive materials, failed to use search terms and methods of searching likely to locate all relevant records, and in the case of the ATF, overlooked responsive materials. ECF No. 21

("Pl's Br.") at 24, 40–41.  For the reasons explained below, the Court finds that both agencies conducted adequate searches.

### 1.    FBI

First, Kowal argues that the FBI's search was inadequate because the only database it searched was the CRS, which uses an index search methodology, and it should have also conducted a text-based search in its Electronic Case File ("ECF") database.  Pl's Br. at 40, 42. To be sure, "the FBI does not index every individual name or other subject matter" that its records may contain, *id.* at 43; Hardy Decl. ¶ 24, and searches limited to indexed terms "are identified at least in part by discretionary decisions left to case agents," *Negley v. FBI*, 658 F. Supp. 2d 50, 58 (D.D.C. 2009).  But the ECF only contains text-searchable versions of documents already in the CRS.  Pl's Br. at 43.  And the FBI states that the CRS is "an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI" that "spans the entire FBI organization." Hardy Decl. ¶ 21; ECF No. 19 ("Def's Br.") at 5–6.  Given that Kowal's request was for documents "pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of" Troya, ECF No. 1-1, those documents would all likely be housed in the CRS.  And the FBI has asserted that its search of the CRS was reasonably calculated to return all responsive records, even with its index search methodology, because the CRS indexes information about individuals such as Troya specifically for the purpose of future retrieval. Hardy Decl. ¶ 34.

Kowal fails to explain why the FBI was required to search its ECF database too.  She suggests that the record "leaves substantial doubt as to the sufficiency of the search," but does not show how.  Pl's Br. at 41.  Instead, Kowal cites *Shapiro v. DOJ*, 944 F.3d 940 (D.C. Cir. 2019), as proof that the ECF database exists and that, because it is text-searchable, "even

misplaced and misfiled records will show up in such a search, as will records that include names and events for which the records were never indexed."  Pl's Br. at 43.  But the FBI's decision to not use its ECF database does not render its search inadequate.  The FBI states that it conducted an index search in the CRS using ACS/UNI and Sentinel, and that "these two index searches in most cases represent the most reasonable means for the FBI to locate potentially responsive records" because they "offer access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects."  Hardy Decl. ¶ 29 (cleaned up). Troya, it should be noted, is not someone alleged to have a tenuous or passing connection to an FBI investigation; in fact, he was the subject of a federal criminal *prosecution*.  Thus, a search of the CRS could reasonably be expected to produce the requested records pertaining to Troya, and the FBI's search constituted a good-faith effort to locate the information requested by Kowal. *See Oglesby*, 920 F.2d at 68.[8]

Second, Kowal argues that the FBI's use of the search terms "Daniel Anthony Troya" and "Homer Troya" was inadequate because: (1) since "Homer" is an alias, the search term "Homer Troya" would not yield documents where only the word "Homer" appeared; (2) the FBI should have also searched Troya's date of birth and social security number; and (3) the FBI should have searched variations of Troya's name since it can conduct three-way phonetic

---

[8] Besides her issue with the FBI's decision to not use text-based searches, Kowal argues that the FBI also failed to provide a sufficient explanation as to why responsive documents would not be found in databases other than the CRS.  Pl's Br. at 44.  However, the FBI "has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return" when "a request does not specify the locations in which an agency should search."  *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998).  And the FBI has shown that the CRS is where the FBI "indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval."  Hardy Decl. ¶ 34.  It was therefore reasonable for the FBI to confine its search to the CRS, and Kowal has failed to establish that the records produced by the CRS search suggest "the existence of documents that [the FBI] could not locate without expanding the scope of its search."  *Campbell*, 164 F.3d at 28.

searches of names in its databases.  Pl's Br. at 40–41.  But the FBI need not use every search

term and variation imaginable to Kowal; it need only conduct a search "reasonably calculated to

uncover all relevant documents."  *Truitt*, 897 F.2d at 542; *see also Tracy v. DOJ*, 191

F. Supp. 3d 83, 92 (D.D.C. 2016) (finding it was reasonable to not use an individual's date of

birth as a search term in querying the CRS where his name produced sufficient information).

The terms used by the FBI here  meet that test.  Kowal's wish for the FBI to have used more

search terms does not make the search itself inadequate, and she has no right to dictate the FBI's

scope of its search.  *See, e.g.*, *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015); *see also*

*Canning*, 346 F. Supp. at 14 (noting that an "agency need not . . . permit the FOIA requester to

dictate the search terms in the course of litigation").  In fact, the FBI's index search system is

designed to store "information about individuals, organizations, events, and other subjects of

investigative interest for future retrieval," and through its search, the FBI located a main file on

Troya, a file "created for each individual that is the subject or focus of an investigation" where

the "main subject is identified in the case title of most documents in the file."  Hardy Decl. ¶¶ 23,

34 (cleaned up).

### 2.   ATF

Turning to the ATF, Kowal similarly argues that the ATF's use of only one search term,

"Daniel Troya," to search for responsive documents rendered its search deficient because she

also supplied the ATF with Troya's alias name, "Homer," and his date of birth.  Pl's Br. at 25;

*see* ECF No. 1-1 (requesting "all documents, files, records, etc. pertaining to any investigation,

arrest, indictment, conviction, sentencing, incarceration, and/or parole of . . . Daniel Troya (a/k/a

'Homer'), DOB: 04/22/1983" and noting his criminal charges).  Again, however, the ATF is

simply required to make "a good faith effort to conduct a search for the requested records, using

methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920

F.2d at 68.  And in doing so, it may rely on the language of the FOIA request to construct its

search.[9]  *See Whitmore v. DOJ*, 132 F. Supp. 3d 69, 77 (D.D.C. 2015) ("An agency may rely on

the plain language of the request itself and proceed accordingly.").  But it is not required to use

the search terms proposed in a FOIA request.[10]  *See Ahanmisi v. U.S. Dep't of Labor*, 859

F. Supp. 2d 7, 11 (D.D.C. 2012).  The absence of "Homer" as a search term does not undermine

the reasonableness of the ATF's search, particularly when considering that the ATF was able to

quickly locate its investigative file on Troya and retrieved the file with "agents knowledgeable of

the case."  *See* Siple Decl. at 4.[11]

---

[9] The ATF's interpretation of Kowal's FOIA request was not "an unreasonable narrowing . . . of the actual request."  Pl's Br. at 26; ECF No. 1-8.  The ATF's construal of Kowal's FOIA request as "one seeking any records of ATF's role in the federal criminal investigation of Daniel Troya" tracks Kowal's own understanding of her request.  ECF No. 19-2 ("Siple Decl.") at 4; *see* Compl. ¶ 19 (stating that Kowal was "seeking disclosure of documents related to Mr. Troya's federal criminal case and prosecution" from the ATF).

[10] Kowal argues that she "plainly requested an alias search here," Pl's Br. at 26, and cites *Davidson v. United States*, which held that "an agency is under no obligation to search its records for information such as aliases, unless that information is specifically requested."  264 F. Supp. 3d 97, 109 (D.D.C. 2017).  But *Davidson* said nothing about whether an agency must use an alias for a search when provided in a request.  The requester there included no aliases in his request, and the Court found no agency obligation to search for records that "do not mention or specifically discuss" the requester because an alias search would have required the agency to "divine [the requester's] intent."  *Id.*  As discussed above, the ATF did not have to use the search term "Homer," and the search conducted using Troya's full name alone was reasonable.  *See Nolen v. DOJ*, 146 F. Supp. 3d 89, 98 (D.D.C. 2015) ("[A] FOIA requester's detailed search instructions cannot dictate the reasonableness of the scope of an agency's search").

[11] Kowal also cites *Canning v. DOJ*, 919 F. Supp. 451 (D.D.C. 1994), to support the proposition that omitting Troya's alias from the search made it inadequate.  Pl's Br. at 26.  But *Canning* is distinguishable.  In *Canning*, the FBI's search for records using the subject's name, Charles Zimmerman, returned no results, even though the FBI had investigated him.  919 F. Supp. at 460.  Because the FBI knew that Zimmerman was also known by Charles Cunningham, the court held that its refusal to search again using that alternate name made its search inadequate.  *Id.* at 460–61.  There are no similar positive signs that records have been overlooked here.

Second, Kowal argues that the ATF's search was also deficient because it failed to provide a sufficient explanation as to why responsive documents would not be found in databases other than the two that it searched.  Pl's Br. at 27.  The ATF states that it conducted its search for responsive documents using N-Force and TECS, the two electronic systems of records where it maintains its criminal investigations.  Def's Br. at 5; Siple Decl. at 2.  Using these systems, the ATF states that it "quickly identified a single criminal investigation . . . out of the Miami Field Division relating to Daniel Troya," and "coordinated with the Miami Field Division, including agents knowledgeable of the case, to retrieve the *entirety* of the criminal investigation case file."  Siple Decl. at 4 (emphasis added); *see* Def's Br. at 5.  The ATF has thus shown that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  An agency should search for responsive records in accordance with how its records are maintained, as the ATF did here.  *See Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Finally, Kowal argues that the ATF's search is inadequate because the record shows the existence of overlooked records.  Pl's Br. at 27–28.  In support of her argument, Kowal references: (1) the ATF's supplemental disclosure of records she claims were not a part of those originally identified as responsive; and (2) the over two hundred "DVDs, CDs, audio recordings, and photos of evidence" in her possession that are responsive to her FOIA requests, and that (in her view) the ATF should have produced to her.  *Id.* at 28.

First, about the supplemental disclosure: while the ATF was preparing its declaration, it identified 13 more pages of responsive records that were part of the *original* investigative file in the case.  *See* Siple Decl. at 5 ("When I reviewed the investigative file in this case, as I prepared

this declaration, I determined that some additional responsive material should be released to Plaintiff."); *see also* ATF Index (noting which previously withheld documents were released to Kowal). In other words, despite Kowal's speculation that the records "turned up" by some new, unexplained search, Pl's Br. at 28, the agency merely determined that prior material reviewed in the case file should be disclosed. And as for the absence of items allegedly in Kowal's possession, she has not explained why, just because *she* has them, the *ATF* must also have them such that it could produce them in response to a FOIA request.[12] *See id.* at 27–28. While "positive indications of overlooked materials" may show that a search was inadequate, the standard typically applies when the requester can show that the agency itself ignored those indications when it conducted its search. *Valencia-Lucena*, 180 F.3d at 327. Since "the adequacy of a FOIA search is not judged on results, but rather on the good faith search itself," the missing items themselves do not show that the search was inadequate. *Carter, Fullerton & Hayes, LLC v. FTC*, 637 F. Supp. 2d 1, 7 (D.D.C. 2009). The ATF may simply not have them, and even if it does, "a reasonable and thorough search may have missed them" for whatever reason. *Iturralde*, 315 F.3d at 315; *see Concepcion v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009) (finding that the plaintiff's "speculation as to the existence of additional records . . . does not render the search[] inadequate"); *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 472 F.3d 312, 318 (D.C. Cir. 2006) (finding that the requester's "assertion that an adequate search would have yielded more documents is mere speculation").

---

[12] Kowal cites *Valencia-Lucena v. U.S. Coast Guard* to support her argument that the ATF's search was inadequate, but she has not shown that the ATF overlooked records here in the way that the Coast Guard did in that case. 180 F.3d 321, 327 (D.C. Cir. 1999). There, the Coast Guard identified a National Archives center likely to have responsive records, but declined to search it. *Id.* The issue was not that the Coast Guard's search missed certain documents, but that the design of the search ignored a location likely to contain them. *Id.*

### B.     Sufficiency of *Vaughn* Indices

Kowal also challenges the sufficiency of the *Vaughn* indices provided by the FBI and ATF.  Because FOIA requesters face information asymmetry that favors the agency, courts evaluating claimed FOIA exemptions must rely on the agency's representation of the materials it withholds.  *See King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987).  A sufficiently detailed *Vaughn* index enables that evaluation.  *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).  An agency must use a *Vaughn* index to explain withheld information by "specify[ing] in detail which portions of the document are disclosable and which are allegedly exempt."  *Vaughn*, 484 F.2d at 827.

A court evaluates a *Vaughn* index on its function, not its form.  *Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987).  An adequate *Vaughn* index functions in part to enable the reviewing court to determine whether the agency properly invoked FOIA exemptions.  *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984).  It does so if it "provide[s] a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).  Thus, an index must "state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant."  *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

Kowal argues that the *Vaughn* indices provided by the FBI and ATF are deficient because they do not provide enough information on the documents withheld that would allow her to assess the propriety of the asserted FOIA exemptions.  Pl's Br. at 8.  For the reasons explained below, the Court agrees with Kowal as to the FBI's *Vaughn* index, but finds the ATF's *Vaughn* index adequate.

###### 1.   FBI

Kowal is correct that some entries in the FBI's *Vaughn* index do not "provide enough information to reasonably discern why some pages of a document were withheld, while others were released with redactions" and "are either incomplete or so vague as to make it impossible to discern why the claimed exemption is justified." *Id.* at 45.  The FBI defends its *Vaughn* index, which uses a coded format, by citing two cases in which courts found the use of a coded format sufficient, but it fails to acknowledge that in those cases, the courts also had either: (1) the associated redacted pages of disclosed records, *Fischer v. DOJ*, 596 F. Supp. 2d 34, 44 (D.D.C. 2009); or (2) an affidavit and coding that adequately described the documents, *Blanton v. DOJ*, 64 F. App'x 787, 789 (D.C. Cir. 2003).  The Court does not take issue with the FBI's use of a coded system, but rather with the difficulty of understanding how the codes apply to the documents in its *Vaughn* index, when the redacted pages are not in the record, and the index itself does not provide document descriptions for redacted pages.  *See, e.g.*, *Judicial Watch*, 449 F.3d at 145 ("Any measure will adequately aid a court if it provides a relatively detailed justification, specifically identifies the reasons why a particular exemption is relevant, and correlates those claims with the particular part of a withheld document to which they apply.") (cleaned up).  The Court must be able to understand with particularity which portions the FBI seeks to withhold under the exemptions claimed.  *See Vaughn*, 484 F.2d at 827–28.  On this record, it cannot.

The FBI's *Vaughn* index is also inadequate with respect to the redactions in pages that the FBI released to Kowal following its consultation with the DEA.  *See* ECF No. 21-6.  For example, in one of a few such instances, the FBI's *Vaughn* index shows that the fourth page in the FBI's release was redacted under its coded exemption (b)(6)-1 and (b)(7)(C)-1, as well as Exemptions 7(C) and 7(F) per the DEA.  *See* FBI Index at Bates No. 34; ECF No. 21-6 at 9.

However, the redacted document also mentions Exemption 7(E), which is described nowhere in the corresponding entry of the *Vaughn* index.  ECF No. 21-6 at 9.  Further, the two pages released in part from an "OCDETF Narrative Summary" are heavily redacted under Exemptions j(2) and 7(C) by the DEA, but neither the FBI's *Vaughn* index, the DEA's declaration, nor the FBI's declaration explains the basis for redacting these pages under these two exemptions.  *See* ECF No. 21-6 at 14–15; FBI Index at Bates Nos. 39–40; Hertel Decl. ¶¶ 11, 15–22 (making conclusory assertions on Exemptions j(2) and 7(C)); Hardy Decl. ¶ 82 ("DEA redacted certain information . . . and has described its reasoning for protecting this information in a separate declaration.").  The FBI's *Vaughn* index therefore fails "to enable the Court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions."  *Judicial Watch*, 449 F.3d at 150.

Because the Court cannot determine whether the FBI has properly invoked its asserted FOIA exemptions, it will be provided the opportunity to submit a revised *Vaughn* index, and, if necessary, to submit redacted versions of the documents withheld in full or in part that help explain which portions of the documents have been withheld under which exemptions, and the factual basis for each portion of the documents withheld.[13]

### 2.   ATF

Kowal argues that the "terse, repetitive descriptions" in the ATF's *Vaughn* index "provide little to no useful information about the individual documents in question," and the index "just repeats boilerplate language about the claimed exemptions for each document."  Pl's Br. at 30.  But in looking at the ATF's *Vaughn* index alongside its declaration and the redacted

---

[13] Because of the FBI's inadequate *Vaughn* index, the Court need not decide whether the FBI improperly withheld any information already in the public domain or any segregable, non-exempt information.

documents from its supplemental response to Kowal, the nature of the redacted material becomes clear. *See Judicial Watch*, 449 F.3d at 145.

The ATF's *Vaughn* index works in tandem with its declaration, which describes the types of general information withheld under each exemption. *See* Siple Decl. at 6–8. Each entry in the index provides the document number, the corresponding Bates number, the page(s) at issue, the document date, whether the page was withheld in full or in part, a short document description, a list of exemptions claimed for the page, and the agency's justification. *See* ATF Index. The declaration provides five categories under which 30 documents were withheld in full. *See* Siple Decl. at 7.[14] The declaration also states that "[f]or the vast majority of redactions under Exemptions 6 and 7(C), [the] ATF simply redacted individual names of third-party witnesses, potential witnesses, and suspects," and "very limited redactions [were applied] to six (6) documents to prevent the disclosure of sensitive techniques or procedures for law enforcement investigations" under Exemption 7(E). *Id.* at 7–8.

An agency may not claim exemptions too broadly, *see Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000), but "categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons," *Judicial*

_____

[14] Kowal argues that the ATF fails to explain why those 30 documents could not be released in redacted form. Pl's Br. at 30. But the ATF's declaration explains that those documents "are sensitive law enforcement records relating to specific witnesses and suspects," and all five categories it provides represent that the records pertain to individuals other than Troya. Siple Decl. at 7. The ATF further clarifies that it applied redactions to "carefully protect information that either by itself, or if read in combination with other public information, could result in the disclosure of the identities of non-law enforcement third parties contained within ATF investigation records." *Id.* at 8. The categories themselves suggest that were the ATF to redact these documents, there would likely be nothing left. *See id.* at 7 (listing "criminal court records," "Department of Motor Vehicle records," "finger print cards or examinations," "TECS queries and personal criminal histories," and "property forfeiture records," all for individuals other than Troya).

*Watch*, 449 F.3d at 147.  The ATF's "index tie[s] each individual document to one or more exemptions, and the [ATF's] declaration link[s] the substance of each exemption to the documents' common elements."  *Id.*  Reviewing the pages the ATF released to Kowal in its supplemental response, the Court finds that the ATF consistently redacted individual names and other personal identifying information under Exemptions 6 and 7(C).  *See* ECF No. 19-4.  Those documents correspond to entries on the *Vaughn* index, for which the ATF provided thorough document descriptions, *see* ATF Index at Nos. 92–99, and the ATF's declaration confirms the types of information redacted under Exemptions 6 and 7(C).  *See* Siple Decl. at 7.  Accordingly, the ATF's *Vaughn* index adequately enables the Court to review the agency's withholding.  *See Lykins*, 725 F.2d at 1463.

### C.    The ATF's Withholdings

The ATF withheld third-party identifying information and third-party records under Exemptions 6 and 7(C).  Siple Decl. at 6–7.  Kowal argues that the ATF's declaration "fails to explain how the agency conducted its balancing of private versus public interests" under Exemptions 6 and 7(C), and the ATF failed to make a showing or assert that "release of the documents would constitute an unwarranted invasion of personal privacy."  Pl's Br. at 30.[15]

All information that "applies to a particular individual" qualifies for consideration under Exemption 6.  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. DOJ*, 503 F. Supp. 2d 373, 381 (D.D.C. 2007) ("Congress'[s] primary purpose in drafting Exemption 6 was to provide for confidentiality of personal matters.").  And as for Exemption 7(C), "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes

---

[15] The ATF also redacted six documents under Exemption 7(E), but Kowal does not challenge the redactions under this exemption.  *See* Siple Decl. at 8.

is somewhat broader than the standard applicable to personnel, medical, and similar files" under Exemption 6. *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). Thus, because "Exemption 7(C) is more protective of privacy than Exemption 6," *U.S. Dep't of Def. v FLRA*, 510 U.S. 487, 496 n.6 (1994), and the records at issue were compiled for law enforcement purposes, the Court need only consider whether the ATF properly invoked Exemption 7(C)—"all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)," *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Because Kowal does not dispute that the requested records about Troya's criminal prosecution are law enforcement files subject to review under Exemption 7(C), the Court will proceed to evaluating the propriety of the ATF's redactions by balancing "the privacy interests involved against the public interest in disclosure." *SafeCard Servs.*, 926 F.2d at 1205. The ATF states that it withheld information under FOIA Exemptions 6 and 7(C) "to protect the individual privacy interests of individual third parties named or identified in law enforcement records." Siple Decl. at 6. And "[c]onsistent with the careful balancing approach," it applied redactions "narrowly and only to the extent necessary to prevent the disclosure of individual names or identifying information of third parties and thus avoiding the risks of negative stigma, embarrassment, or harassment that can result from being publicly identified in [] records pertaining to a serious criminal investigation." *Id.* at 6–7. The ATF also clarifies that for most redactions, it "simply redacted the names of third-party witnesses, potential witnesses, and suspects," and in particular, "[n]ames redacted from records include aliases or suspected aliases and nicknames of witnesses, potential witnesses or suspects." *Id.* at 7. Otherwise, "[i]n some instances, dates of birth, phone numbers, residential addresses, and physical descriptions of information . . . of non-law enforcement third parties are redacted," as well as "[n]ames and

21

badge numbers of law enforcement officers, other than ATF Special Agents in Charge or

Assistant Special Agents in Charge." *Id.*

Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators."

*SafeCard Servs.*, 926 F.2d at 1205 (quoting *Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)).

And the public interest in that information is "not just less substantial, it is insubstantial," *id.*,

unless there is "compelling evidence that the agency denying the FOIA request is engaged in

illegal activity" and "access to the names of private individuals appearing in the agency's law

enforcement files" is necessary to confirm or refute that evidence, *id.* at 1205–06.  Otherwise,

"there is no reason to believe that the incremental public interest in such information would ever

be significant," and the information is categorically exempt from disclosure.  *Id.* at 1206.  Since

Kowal does not point to any illegal activity implicating the ATF's redactions under Exemptions

6 and 7(C) of names, addresses, and other identifiers of suspects, witnesses, and investigators

mentioned in investigatory files, the Court cannot find fault with the balance struck by the ATF.

While Kowal does not rely on any overriding public interest mandating disclosure, she

argues that the ATF's redactions were improper because of the public domain doctrine.  She

argues that the ATF cannot rely on "'the risks of negative stigma, embarrassment, or harassment

that can result from being publicly identified in records pertaining to a serious criminal

investigation' . . . as the basis for withholding [because] those risks are profoundly diminished

when the individuals are public employees whose identities were already disclosed during the

public trial in this case."  Pl's Br. at 30 (quoting Siple Decl. at 7).

To be sure, agencies "cannot rely on an otherwise valid exemption claim to justify

withholding information that has been 'officially acknowledged' or is in the 'public domain.'"

*Davis v. DOJ*, 986 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Dep't of State*, 702 F.2d

1125, 1130–34 (D.C. Cir. 1983)).  But "a plaintiff asserting a claim of prior disclosure must bear

the initial burden of pointing to *specific* information in the public domain that appears to

duplicate that being withheld," *id.* (emphasis added) (quoting *Afshar*, 702 F.2d at 1130), to

ensure that "the information sought is truly public and that the requester receive no more than

what is publicly available," *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999).  "For the

public domain doctrine to apply, the specific information sought must have already been

'disclosed and preserved in a permanent public record.'"  *Students Against Genocide*, 257 F.3d at

836 (quoting *Cottone*, 193 F.3d at 554).

　　　　Kowal attaches long trial transcripts, with no pinpoint citations, to purportedly show that

the ATF has "continually invoke[d] exemptions relating to case agents, informants, and the like,

even though the agents and informants actually testified at the trial, placing the information in

the public domain."  Pl's Br. at 31; *see* ECF Nos. 21-22 to 21-26.  She argues that Troya was

"the subject of a high publicity trial that was tried over the course of months with high media

scrutiny," where "case agents, informants, and other witnesses testified," removing "any cloak of

privacy, confidentiality, and anonymity," and she provides the names of a DEA agent and

confidential source who both testified at the trial.  Pl's Br. at 31.  But Kowal has failed to meet

her burden.  She does not identify the "specific" trial documents that are "identical" to those the

ATF is withholding, *Davis*, 986 F.2d at 1280, nor does she specify any information in the public

domain about this DEA agent and confidential source, beyond their names.  *See Bartko v. DOJ*,

167 F. Supp. 3d 55, 72 (D.D.C. 2016) ("[A]side from the trial testimony he references, [the

plaintiff] has not even tried to explain how the balance of the materials he seeks is 'public.'");

*Black v. DOJ*, 69 F. Supp. 3d 26, 35 (D.D.C. 2014) (attaching court transcripts but failing "to

point to specific information identical to that being withheld that has been placed in the

permanent public record").  Further, "[e]ven if [Kowal] already knows the identities of trial witnesses, the [ATF's] decision to withhold their names and other identifying information under Exemption 7(C) is justified" because "[a] witness does not waive his or her interest in personal privacy by testifying at a public trial."  *Sellers v. DOJ*, 684 F. Supp. 2d 149, 159–60 (D.D.C. 2010); *see also Lardner v. DOJ*, No. 03-cv-0180 (JDB), 2005 WL 758267, at *19 (D.D.C. Mar. 31, 2005) (finding that the name of a witness who testified at a public trial was properly withheld under Exemption 7(C).  Ultimately, Kowal has not shown that the material she seeks is in the public domain, and since the ATF justified its reliance on Exemptions 6 and 7(C), it may withhold that information.  *See Davis*, 986 F.2d at 1280.

### D.    Segregability of the ATF's Withheld Documents

Finally, Kowal argues that the ATF failed to show that no portion of the 30 documents it withheld in their entirety under Exemptions 6 and 7(C) was reasonably segregable.  Pl's Br. at 32.  Under FOIA, any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  The agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."  *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).  Defendants must, however, identify the exempt material and "provide descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions."  *Am. Immigr. Council v. DHS*, 950 F. Supp. 2d 221, 248 (D.D.C. 2013).

The ATF's declaration explains that it applied redactions to documents when it could do so "in such a way as to carefully protect information that either by itself, or if read in combination with other public information, could result in the disclosure of the identities of non-law enforcement third parties contained within ATF investigation records," and confirms that

"[a]ll meaningful segregable information has been disclosed to Plaintiff." Siple Decl. at 8. As explained above, the ATF provided five categories under which it withheld in their entirety 30 "sensitive law enforcement records relating to specific witnesses and suspects" for privacy reasons:

> (1) criminal court records of third parties, including sentencing reports, sentencing records, judgments, and requests for certified court records for individuals other than Daniel Troya; (2) Department of Motor Vehicle records, primarily title searches, run on personal vehicles owned by individuals other than Daniel Troya; (3) finger print cards or examinations for individuals other than Daniel Troya; (4) TECS queries and personal criminal histories for individuals other than Daniel Troya; and (5) property forfeiture records for property forfeited by individuals other than Daniel Troya.

*Id.* at 7. The ATF also provided descriptions for the documents it withheld in their entirety in its *Vaughn* index. *See* ATF Index. The nature of these documents is consistent with ATF's assertion that it would be impossible to meaningfully redact them and still withhold private information subject to Exemptions 6 and 7(C). And "access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)" are categorically exempt from disclosure. *SafeCard Servs.*, 926 F.2d at 1206. The ATF has thus shown with "reasonable specificity" as to why the 30 documents cannot be segregated. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

## IV.   Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that as to Plaintiff's claims against the ATF and the adequacy of the search conducted by the FBI, Defendants' Motion for Summary Judgment, ECF No. 19, is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 21, is **DENIED**. In all other respects, the Motions are **DENIED WITHOUT**

PREJUDICE.  It is further **ORDERED** that the parties shall meet, confer, and submit a joint schedule for briefing renewed motions for summary judgment by October 9, 2020.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 24, 2020