UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA KOWAL<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE et al.,<br><br>*Defendants*. | Civil Action No. 18-2798 (TJK) |

## MEMORANDUM OPINION

Barbara Kowal, a paralegal at the Federal Defender for the Middle District of Florida, filed this Freedom of Information Act suit against the Department of Justice and three of its components, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Federal Bureau of Investigation, and the Drug Enforcement Agency. Kowal requested all records from the ATF and FBI pertaining to Daniel Troya, a capital defendant represented by the Federal Defender in his post-conviction hearings. The ATF and FBI produced documents from their records systems but withheld others in whole or in part under several FOIA and Privacy Act exemptions. The FBI also sent a subset of documents to the DEA for review, which were released in part to Kowal. After cross-motions for summary judgment, the Court granted summary judgment for Defendants as to the ATF and the adequacy of the FBI's search, but concluded that the FBI's *Vaughn* indices were inadequate. Since then, the FBI has updated its *Vaughn* indices and the parties have cross-moved again for summary judgment.

Defendants argue that their updated *Vaughn* indices are sufficient, they properly invoked certain FOIA exemptions to justify their withholdings, and they met their duty to disclose all reasonably segregable portions of the records at issue. In response, Kowal argues that the FBI's

*Vaughn* indices are still inadequate, that the FBI failed to adequately justify the claimed FOIA exemptions, improperly withheld information in the public domain, and failed to disclose all reasonably segregable information. The Court finds that the FBI's *Vaughn* indices are sufficient and that it properly invoked Exemptions 3, 6, 7(C), 7(D), 7(E), and 7(F). The Court also finds that the FBI met its duty to disclose all reasonably segregable portions of the records at issue. The Court will therefore grant Defendants' motion and deny Kowal's.

## I.  Background

The Court granted Defendants' previous motion for summary judgment as to the ATF and as to the adequacy of the FBI's search. *Kowal v. DOJ,* 490 F. Supp. 3d 53, 72 (D.D.C. 2020). The Court assumes familiarity with the facts and the contents of its prior Opinion and Order. Since that time, Defendants have filed updated *Vaughn* indices and additional declarations. *See* ECF 31-2. Pending before the Court are their renewed cross-motions for summary judgment. ECF No. 31; ECF No. 36.

## II.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008). It creates a "strong presumption in favor

of disclosure," and "places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  If information is already in the public domain, an agency cannot invoke an otherwise valid exemption to withhold it.  *See Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001).  When an agency withholds portions of a record, it must still disclose "[a]ny reasonably segregable portion . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

A court reviewing a FOIA action may grant summary judgment based on the agency's declarations "[i]f an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). But the agency may not rely on "conclusory and generalized allegations of exemptions" in its affidavits.  *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).

**III.     Analysis**

    **A.     Sufficiency of FBI's *Vaughn* Indices**

Kowal again challenges the sufficiency of the *Vaughn* indices provided by the FBI. Because FOIA requesters face information asymmetry that favors the agency, courts evaluating claimed FOIA exemptions must rely on the agency's representation of the materials it withholds. *See King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987).  A sufficiently detailed *Vaughn* index enables that evaluation.  *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). An agency must use a *Vaughn* index to explain withheld information by "specify[ing] in detail which portions of the document are disclosable and which are allegedly exempt." *Vaughn*, 484 F.2d at 827.

A court evaluates a *Vaughn* index on its function, not its form. *See Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987). An adequate *Vaughn* index functions in part to enable the reviewing court to determine whether the agency properly invoked FOIA exemptions. *See Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984). It does so if it "provide[s] a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Thus, an index must "state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant." *Founding Church of Scientology of Wash., D.C. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

Kowal argues that the FBI has not cured the deficiencies in its *Vaughn* indices and fails to "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc.*, 566 F.2d at 251. Kowal also argues that "[f]requently the level of detail in the document descriptions is insufficient to allow a requestor to reasonably determine whether the claimed exemptions have been properly invoked." ECF No. 35 at 15. In ruling on the previous cross-motions for summary judgment, the Court noted that the lack of document descriptions or submission of redacted documents made it difficult to "understand with particularity which portions the FBI seeks to withhold under the exemptions claimed." *Kowal v. DOJ*, 490 F. Supp. 3d 53, 68 (D.D.C. 2020).

But the FBI's revised indices resolve these issues. The *Vaughn* indices now include descriptions as to the types of documents to which the exemptions are being applied. These descriptions work in combination with coded designations and Defendants' declarations to give

4

further context as to why each exemption is relevant. In combination, these tools provide enough information for the Court to understand the nature of the redacted material. *See Judicial Watch*, 449 F.3d at 145. And ultimately, the FBI's revised *Vaughn* indices adequately enable the Court to review the agency's withholdings under these exemptions. *See Lykins*, 725 F.2d at 1463.

      **B.**      **The FBI's Withholdings**

            **1.**      **Exemption 3**

Defendants invoke Exemption 3 to withhold documents "relating to wire and electronic communications interception and interception of oral communications." ECF No 31-2 at 38 ("Second Hertel Decl.") ¶ 9. FOIA's Exemption 3 exempts records that are "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i). And the D.C. Circuit has held that "intercepted communications" obtained under a Title III wiretap fall "squarely within the scope" of Exemption 3. *Chong v. DEA*, 929 F.2d 729, 733 (D.C. Cir. 1991).

Defendants invoked this exemption for two pages of a "narrative summary of the initiation of an investigation of a targeted drug trafficking organization." *See* ECF No. 31-2 at 12. The FBI's declaration explains that it invoked the exemption because portions of the records are based on wire and electronic communication interceptions and are thus protected under 18 U.S.C. § 3510. Second Hertel Decl. ¶ 9. But Kowal argues that Defendants have not met their burden to withhold these pages due to the potential applicability of the public domain doctrine. *See* ECF No. 35 at 17. She reasons that the recorded wiretaps were played at trial and are therefore part of the public domain. She invokes *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir.

1999), to suggest that these recordings "los[t] their protective cloak once disclosed" and that without more information, the Court cannot evaluate whether the FBI improperly withheld materials already in the public domain.

But Kowal's argument misses a critical point—the *Vaughn* index makes clear that the records at issue are part of a "narrative summary" document, not a transcript or tapes of a wiretap. *See* ECF No. 31-2 at 12. Even assuming the wiretaps referenced in the narrative summary were played at trial, Kowal has not shown that the document at issue is part of the public domain. "For the public domain doctrine to apply, the specific information sought must have already been 'disclosed and preserved in a permanent public record.'" *Students Against Genocide*, 257 F.3d at 836 (quoting *Cottone*, 193 F.3d at 554). Thus, Defendants have properly invoked Exemption 3.

### 2. Exemptions 6 and 7(C)

Under Exemptions 6 and 7(C), Defendants withheld the identities of, and personal information about, individuals involved or associated with law enforcement investigations. Second Hertel Decl. ¶ 16. All information that "applies to a particular individual" qualifies for consideration under Exemption 6. *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. DOJ*, 503 F. Supp. 2d 373, 381 (D.D.C. 2007) ("Congress'[s] primary purpose in drafting Exemption 6 was to provide for confidentiality of personal matters."). And under Exemption 7(C), "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files" under Exemption 6. *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). Thus, because "Exemption 7(C) is more protective of privacy than

Exemption 6," *U.S. Dep't of Def. v FLRA*, 510 U.S. 487, 496 n.6 (1994), and the records at issue were compiled for law enforcement purposes, the Court need only consider whether the FBI properly invoked Exemption 7(C). *See Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("[A]ll information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."). Narrowing the analysis further, because Kowal does not dispute that the requested records about Troya's criminal prosecution are law enforcement files for purposes of Exemption 7(C), the Court need only evaluate the FBI's redactions by balancing "the privacy interests involved against the public interest in disclosure." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

"Exemption 7(C) 'affords broad[] privacy rights to suspects, witnesses, and investigators.'" *SafeCard Servs.*, 926 F.2d at 1205 (quoting *Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)). And the public interest in personally identifiable information is "not just less substantial, it is insubstantial," *id.*, unless there is "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and "access to the names of private individuals appearing in the agency's law enforcement files is necessary to confirm or refute that evidence." *Id.* at 1205–06. Otherwise, "there is no reason to believe that the incremental public interest in such information would ever be significant," and the information is exempt from disclosure. *Id.* at 1206. Since Kowal does not point to any illegal activity implicating the FBI or its redactions under Exemptions 6 and 7(C), the Court cannot find fault with the balance that the FBI struck.

Kowal argues that Defendants have provided no facts to suggest that disclosure would work a clearly unwarranted invasion of personal privacy so as to outweigh public interest in disclosure. *See* ECF No. 35 at 21. In part, this argument presumes that these individuals' identities were revealed at trial. While perhaps some of them were, Kowal does not meet her

burden to show that the identical documents and information that FBI seeks to withhold here were made public then. *See Bartko v. DOJ*, 167 F. Supp.3d 55, 72 (D.D.C. 2016) ("Aside from the trial testimony she references, the plaintiff has not even tried to explain how the balance of the materials she seeks is public.") (cleaned up); *Black v. DOJ*, 69 F. Supp. 3d 26, 35 (D.D.C. 2014) (determining burden unmet where plaintiff provided court transcripts but failed "to point to specific information identical to that being withheld that has been placed in the permanent public record").[1]  Further, "[e]ven if [Kowal] already knows the identities of trial witnesses, the [FBI's] decision to withhold their names and other identifying information under Exemption 7(C) is justified" because "[a] witness does not waive his or her interest in personal privacy by testifying at a public trial." *Sellers v. DOJ*, 684 F. Supp. 2d 149, 159–60 (D.D.C. 2010); *see also Lardner v. DOJ*, No. 03-cv-0180 (JDB), 2005 WL 758267, at *19 (D.D.C. Mar. 31, 2005) (finding that the name of a witness who testified at a public trial was properly withheld under Exemption 7(C)). Ultimately, Kowal has not shown that the withheld material is in the public domain, or that the balance of interests tips towards release of the information withheld by Defendants under Exemptions 6 and 7(C).

### 3.     Exemption 7(D)

Exemption 7(D) allows the withholding of records that could disclose the identity of confidential sources as well as any information those sources provide.  5 U.S.C. § 552(b)(7)(D).

---

[1] Kowal also argues that an October 31, 2007, third-party plea agreement, Exhibit BB (TT 5953), is within the public domain because it was admitted into evidence at Troya's trial.  ECF No. 44-3.  But the FBI attests that the plea agreement is not available on the public docket and thus is not in the public domain.  In *Cottone*, the court held that the government can rebut a plaintiff's suggestion that trial records are in public domain by showing that the evidence has since been "destroyed, placed under seal, or otherwise removed from the public domain." 193 F.3d 550, 556 (D.C. Cir. 1999).  Thus, because the plea agreement is not available on the public docket, it is not in the public domain, and may be withheld under Exemption 7(C).

In determining the applicability of the exemption, "the question is . . . whether the particular source spoke with an understanding that the communication would remain confidential." *DOJ v. Landano*, 508 U.S. 165, 172 (1993).  Defendants invoked Exemption 7(D) to "withhold portions of the report that contained information that would disclose the identity of and the information provided by a confidential source."  Second Hertel Decl. ¶ 27.  Defendants claim that sometimes they gave an express assurance of confidentiality to their sources and, at other times, an assurance of confidentiality was implied, given the subject matter of the investigation.  *Id.* ¶ 28; ECF No. 31 at 14.

Kowal argues that Defendants improperly presumed that any individuals who provided information to the FBI did so under an implied assurance of confidentiality.  *See* ECF No. 35 at 25.  Kowal is right that it would be improper to apply a blanket presumption.  *See Landano*, 508 U.S. at 175–76.  But an assurance of confidentiality can still be implied based on the nature of the criminal investigation and the informant's relationship to the target.  *Id.* at 179.  This is one of those situations.  The FBI explains that the sources provided information about a "drug organization" and the related murder of a family on a roadside.  ECF No. 40-2 at 11.[2]  And Courts often find that confidentiality is implied in illicit drug trade investigations because violent reprisal is so common.  *See, e.g.*, *Wilson v. DEA*, 414 F. Supp. 2d 5, 15 (D.D.C. 2006); *Mays v. DEA*, 234 F.3d 1324, 1329–30 (D.C. Cir. 2000); *Love v. DOJ*, No. 13-cv-1303,

---

[2] To the extent Kowal argues that the "particularized approach" laid out in *Landano* requires information about the specific circumstances of each informant, ECF No. 35 at 24, she overstates the holding of that case.  *Landano* rejects a categorical presumption of confidentiality for all investigations and instead requires the government to distinguish those investigations for which they assert Exemption 7(D) from the run-of-the-mill variety.  *See also Quiñon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996) (discussing the "case-specific factor" cited to justify invocation of Exemption 7(D)).  But *Landano* does not require that each distinguishing factor be provided to the Court as to each individual source, and Kowal cites no case law to support such a requirement.

2015 WL 5063166 at *6 (D.D.C. 2015). Because of the nature of the investigation, the Court can infer an assurance of confidentiality. And this inferred assurance of confidentiality allows the Court to conclude that Defendants properly invoked Exemption 7(D).

    4.    **Exemption 7(E)**

Exemption 7(E) allows the withholding of documents complied for law enforcement purposes if disclosing such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Agencies face a "relatively low bar" when trying to withhold information under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The agency need only "demonstrate logically how the release of the requested information might create risk of circumvention of the law." *Id.* (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Both the FBI and DEA's *Vaughn* indices reflect withholdings based on this exemption. The FBI withheld four categories of information: "Sensitive Information within FBI FD-515 Forms," "Internal Secure File Paths and E-mail Web Addresses," "Investigative Techniques and Procedures Relevant to the FBI's Informant Program," and "Database Identifier[s]." *See* ECF No. 19-6 at 30–35. The Hardy Declaration describes each of these categories and presents the logic for how release of the requested information might create risk of circumvention of the law. *See* ECF No. 19-6 at 30–35. And the DEA invoked this exemption to withhold several pages of a "Organized Crime Drug Enforcement Task Force (OCDETF) Investigation Initiation Form Narrative Summary of the Case Investigation." ECF No. 31-2 at 52–57. The Hertel Declaration

also explains that the exempt portions "deal with manpower requirements, tools to be used in the investigation, strategy for pursuing the targeted information, and more." ECF No. 31-2 at 46–47.

Kowal contests Defendants' reliance on Exemption 7(E) on several grounds. First, she argues that the "FBI has failed to demonstrate that the information it has withheld concerns techniques that are not otherwise already in the public domain." ECF No. 35 at 28. And second, she argues that Defendants have not shown that they have met their segregability responsibilities about material withheld under Exemption 7(E). She specifically flags a document appearing at bates-stamped page 141, which Defendants withheld in full, despite their invocation of 7(E) to redact "Internal Secure File Paths and E-mail Web Addresses." ECF No. 35 at 28–29. And finally, she challenges Defendants' establishment of a logical connection between the withheld information and circumvention of the law, specifically pointing to information withheld under the "database identifiers" and "internal secure file paths" categories. ECF No. 44 at 19–20.

Defendants face only a relatively low bar to invoke Exemption 7(E), and they have cleared it. As for Kowal's public domain argument, the Hardy Declaration makes clear that information related to publicly known law enforcement techniques was withheld because it *also* included non-public information. For example, Defendants acknowledge that the surveillance techniques discussed on pages with redactions for "Sensitive Information within FBI FD-515 Forms" are publicly known. But the information redacted there is a rating scale assessing the effectiveness of each technique in the context of the investigation, as well as information about law enforcement partnerships used to carry out the techniques. Kowal does not argue that this kind of specific contextual and analytical information is publicly known. And as Defendants suggest, this sort of information could alert potential criminals to the techniques that the FBI

11

finds useful in a certain type or stage of investigation, as well as their law enforcement partners that might be involved in these investigative methods.

Kowal's arguments related to "Internal Secure File Paths and E-mail Web Addresses" also come up short. First, as to bates-stamped page 141, Defendants explain that a sensitive file path was withheld under Exemption 7(E), but that other information on that page was withheld under *other* exemptions, which ultimately caused Defendants to withhold the entire page. ECF 40-1 at 5. And second, Defendants have met their burden to "demonstrate logically how the release of the requested information might create risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. The FBI explains that "internal secure file paths" "if released, could allow hackers with technical skills an opportunity to exploit the FBI by disrupting the FBI's internal communications. By releasing this information publicly, the FBI could jeopardize its own secure technological infrastructure thereby assisting criminals in circumventing the law." ECF 40-1 at 5. And as for "database identifiers," the FBI explains that "[r]eleasing the identity of this database would give criminals insight into the available tools and resources the FBI and its partners use to conduct criminal and national security investigations." ECF 19-6 at 35. This kind of technical information is regularly withheld under Exemption 7(E), and the FBI has sufficiently explained the logic that justifies withholding it here. *See Price v. DOJ*, No. 18-cv-1339 (CRC), 2020 WL 3972273, at *13 (D.D.C. July 14, 2020); *Dutton v. DOJ*, 302 F. Supp. 3d 109, 125 (D.D.C. 2018).

     **5.**    **Exemption 7(F)**

Exemption 7(F) allows the withholding of documents compiled for law enforcement purposes if disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Defendants only invoke Exemption 7(F) in

conjunction with Exemption 7(C).  ECF No. 31-2 at 7–31.  Given that Exemption 7(F) is "an absolute ban against certain information and, arguably, an even broader protection than 7(C)," *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002), and as the Court has determined that Defendants properly invoked Exemption 7(C), the Court need not reach the applicability of Exemption 7(F).  *See Wilson v. DEA*, 414 F. Supp. 2d 5, 14 n.8 (D.D.C. 2006).

### C. Segregability of the Documents FBI Withheld in Full

Finally, Kowal argues that the FBI failed to show how portions of documents it withheld in full were not segregable.  Segregability is analyzed using a burden-shifting framework.  Agencies must provide a "detailed justification" for the non-segregability of the withheld information, although not "so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Agencies typically meet their initial burden by providing a *Vaughn* index and "a declaration attesting that the agency released all segregable material." *Judicial Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014).  Once that happens, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  The plaintiff must then produce a "quantum of evidence" rebutting this presumption, at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.*

Kowal argues that Defendants' justifications for withholding the documents in full were too conclusory and circular to prove that the agency properly determined that there were no segregable portions.  ECF No. 40 at 30.  But the FBI has met its initial burden here and the plaintiff has not produced a "quantum of evidence" to rebut it.  The FBI has provided a *Vaughn* index detailing which documents have been withheld in full and which exemptions were applied.

And, as its declaration explains, "any non-exempt information on [pages withheld in full] was so intertwined with exempt material, no information could be reasonably segregated for release." ECF 19-6 at 38.  Upon review of the relevant *Vaughn* indices and Defendants' declarations, the Court is satisfied that Defendants have shown that no portion of the documents withheld in full is reasonably segregable and therefore must be disclosed.[3]

### IV.     Conclusion

For all the above reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Kowal's Motion for Summary Judgment.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 30, 2021

---

[3] Upon consideration of the Plaintiff's Proposed Amended Counterstatement of Material Facts, ECF No. 43-1, the Court does not find that the Proposed Counterstatement materially impacts its opinion or the reasoning underlying it.  Therefore, the Court will deny the Plaintiff's Motion to Amend as moot.